# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RALPH RAY TENNANT, JR.,**

  **Petitioner,**

  v.             **CIVIL ACTION NO. 1:04CV251**
                  **(Judge Stamp)**

**THOMAS McBRIDE, Warden,**

  **Respondent.**

## REPORT AND RECOMMENDATION
## 28 U.S.C. §2254

### I. INTRODUCTION

On December 6, 2004, the *pro se* petitioner filed a Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody. By Order entered on January 6, 2005, the Court ordered the respondent to answer the petition. On February 14, 2005, the respondent filed Respondent's Consolidated Answer, Motion for Summary Judgment, Motion to Dismiss and Memorandum in Support Thereof.

Subsequently, the Court issued a Roseboro[1] notice advising the petitioner of his right to respond to the motion to dismiss and motion for summary judgment, and advising him that his failure to do so may result in the dismissal of his case. On March 22, 2005, the petitioner filed Petitioner's Response in Opposition to Respondent's Consolidated Answer for Summary Judgment, Motion to Dismiss, and Memorandum in Support Thereof.

This matter is pending before me for initial review and report and recommendation pursuant

---

[1] Roseboro v. Garrison, 528 F. 2d 309, 310 (4th Cir. 1975).

to LR PL P 83.13.

## II. PROCEDURAL HISTORY

### A. Proceedings in the Circuit Court of Monongalia County

#### 1. Conviction and Sentence

On May 26, 2000, the petitioner was convicted by a jury for the Circuit Court of Monongalia County of four counts of first degree sexual assault. By order entered on March 8, 2001, the petitioner was sentenced to four concurrent terms of 15-35 years imprisonment. The petitioner is currently incarcerated at the Mount Olive Correctional Complex.

The petitioner filed a petition for direct appeal with the West Virginia Supreme Court of Appeals. The petition for appeal was refused on May 24, 2001.

#### 2. State Habeas Proceedings

On April 16, 2002, the petitioner filed a pro se petition for writ of habeas corpus in the Circuit Court of Monongalia County. He was appointed counsel and a supplemental petition was filed on July 22, 2002. By Order entered on March 23, 2004, the circuit court denied the petition on its merits without holding an evidentiary hearing.

The petitioner filed a petition for appeal from the denial of his habeas petition. On November 10, 2004, the petition was refused.

### C. Federal Habeas Corpus

#### Petitioner's Contentions

1. The petitioner contends that certain constitutional rights protected under the equal protection and due process clause of the United States Constitution and the Constitutional Right to a fair and impartial jury trial were violated as a result of perjured testimony supplied by a police officer.

2. The petitioner contends the prosecution committed misconduct and constitutional reversible error by introducing suppressed evidence in closing arguments that had been suppressed during the trial in violation of the United States Constitution.

3. The petitioner contends there was insufficient evidence to prove the alleged crimes; that the conviction is erroneous and defies physical laws and fails to show a complete trustworthiness of the jury's verdict, denying the petitioner a fair and impartial jury trial in violation of the United States Constitution.

**Respondent's Contentions**

1. No false testimony was offered at the petitioner's trial.

2. The prosecutor's statements in closing were harmless.

3. There was sufficient evidence to sustain the verdict.

### III. ANALYSIS

**A. Standard of Review**

**1. Motion to Dismiss**

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Franks v. Ross, 313 F. 3d 184, 192 (4th Cir. 2002). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S.41, 45-46 (1957). Furthermore, a district court should construe pro se complaints liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (emphasizing the liberal construction rule for

3

pro se complaints raising civil rights issues).

   2. **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too has the Fourth Circuit Court of Appeals. See Maynard v. Dixon, 943 F. 2d 407 (4th Cir. 1991).

From the text of Rule 56(c) of the Federal Rules of Civil Procedure, it is clear that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Motions for summary judgment impose a difficult standard on the moving party; for, it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).

However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be

4

viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. §2254 must be examined to determine whether habeas relief is proper.

### 3. 28 U.S.C. §2254

28 U.S.C. §2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a).

Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A).

However, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the State court proceeding.

28 U.S.C. §2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir.1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d

149 (4th Cir. 2000), cert. denied, 534 U.S. 830(2001)(quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)). However, the court must still "confine [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

"An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

Even if the state court's determination that there is no constitutional error was "contrary to" or "an unreasonable application of" Supreme Court precedent, habeas corpus relief is not warranted unless the error had a "'substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.' §28 U.S.C. 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433 (4th Cir. 2003).

6

The petitioner's claims have been adjudicated on the merits. As discussed below, the petitioner fails to demonstrate that the state court arrived at a conclusion that is contrary to or an unreasonable application of federal law. Further, he fails to prove that the state court unreasonably determined the facts when analyzing his claims. For these reasons, the petitioner has not established that he is entitled to relief pursuant to 28 U.S.C. §2254.

**B. False Testimony**

The petitioner asserts that Officer Dan Shane knowingly and intentionally made false statements to the grand jury. Specifically, the petitioner argues that while Officer Shane testified before the grand jury that James Johnson, an individual who lived at the victims' home, told him that the victims, Megan and Cassandra Doman, indicated to him that the petitioner had them perform oral sex on him and he performed sexual acts on them. However, during trial, Officer Shane testified that Johnson told him that he had found the girls in the room with the petitioner and that they were nude, and that no one had spoken to the girls prior to his investigation.

Additionally, the petitioner argues that Officer Shane told the grand jury that Johnson advised him that the petitioner came to the house around 2:30 a.m., but he testified during trial that Johnson told him that the petitioner came to the house at 3:30 a.m. The petitioner further argues that Johnson called 911 at 4:05 a.m. and that the events to which Shane testified to in front of the grand jury could not have happened within 35 minutes notwithstanding the fact that Officer Shane told the grand jury the incident lasted approximately 15 minutes.

Officer Shane admitted during the petitioner's trial that he had made misstatements in the grand jury hearing. The petitioner argues that without the misstatements he would not have been indicted by the grand jury. The respondent argues that any misstatement before the grand jury had

7

no relevance on the outcome of the trial proceedings. The respondent further argues that there is no federal constitutional right to be tried upon a grand jury indictment for a statement offense, and thus, such claim is not cognizable in federal habeas corpus.

With regard to this issue, the state habeas court determined that Officer Shane's testimony before the grand jury and the petit jury was inconsistent. The court found as follows:

> The Supreme Court of Appeals of West Virginia had held that an indictment is presumed to be found upon sufficient and proper evidence and cannot be attacked or quashed because it rests, in whole or in part, on in part, on incompetent or insufficient evidence. cf. State v. Woodrow, 52 S.E. 2d 545 (1905). The rationale for rejecting such an objection is that if improper evidence was heard by the grand jury, the error will be corrected before the petit jury and no substantial injury will result. cf. State v. Layton, 432 S.E. 2d 740 (W.Va. 1993). Cleckley, Handbook on West Virginia Criminal Procedure, p. I-654-655 (1994) See also State v. Bengalis, 378 S.E.2d 449 (W.Va. 1989), where the Defendant argued that the indictment should be dismissed due to misstatements to the grand jury by an investigating officer and the Supreme Court of Appeals of West Virginia found a waiver of that error because it was not made under Rule 12(b)(2) prior to trial.
>
> First, the testimony of Officer Shane before the grand jury, even if technically false, could not constitute perjury. Perjury is committed by any person "who willfully testifies falsely regarding a material matter. . ." W.Va. Code §61-5A-1(a).
>
> Second, the alleged false statements were not material. Officer Shane's alleged false statements to the grand jury related to whether the babysitter had questioned the children with regard to what happened and whether the information that Officer Shane received with regard to what had happened to the children came from the children by way of the babysitter. In fact, the information received by Officer Shane came in part from the babysitter and in part from the children themselves. The substance of the information remained the same no matter what source Officer Shane attributed it to. Accordingly, the alleged false testimony was not material and its absence from the grand jury testimony would not have resulted in an indictment not being returned.
>
> Finally, the Court concluded that the alleged false testimony was not knowingly and intentionally employed by the government in order to obtain a conviction. In fact, at the trial of this matter, the government instead of repeating and attempting to rely upon the allegedly false testimony, offered Officer Shane's testimony which was inconsistent with his grand jury testimony. This allowed the Petitioner's trial counsel to cross examine and impeach Officer Shane's testimony

> with his prior inconsistent grand jury testimony. Officer Shane was cross examined extensively and effectively with regard to these inconsistencies in his testimony. Certainly, the government was not knowingly and intentionally employing false testimony in order to gain a conviction.
>
> (Resp't Ex. 8 at 125-26).

The function of the grand jury is not to determine the truth of the charges against the defendant, but to determine whether there is sufficient probable cause to require the defendant to stand trial. Bracy v. United States, 435 U.S. 1301, 1302 (1978). Generally, "a post-verdict claim of prosecutorial interference with the grand jury's determination of probable cause is rendered harmless by the verdict of a petit jury; unless the defect is 'so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment to no longer be an indictment.'" United States v. Schmidt, 935 F. 2d 1440, 1446, n.2 (4th Cir. 1991)(quoting Midland Asphalt Corp. v. United States, 489 U.S. 794, 802 (1989).

The Supreme Court has ruled that a court may vacate a conviction for prosecutorial misconduct before the grand jury if the defendant was prejudiced by the errors. Prejudice exists "'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988).

The only evidence the petitioner presents is that Officer Shane admitted during trial that he had made misstatements to the grand jury. The petitioner has not submitted any evidence that the misstatements made by Officer Shane were material to the outcome and return of the indictment.

Consequently, the undersigned finds that the factual findings by the habeas courts are not based upon an unreasonable determination of the facts, and the petitioner has failed to rebut the presumption that the factual findings of the state court are presumed to be correct. Further, the

9

plaintiff has failed to show that the decision of the state court is not contrary to or an unreasonable application of federal law.

C. **Statements of the prosecutor during closing**

The petitioner alleges that his trial was rendered fundamentally unfair because during closing argument, the prosecutor made reference to evidence which had been ruled as inadmissable hearsay.

During the trial, the State asked Officer Shane "Okay, what types of questions - - when you asked about what Ray had done, what type of questions did you present to them in order to illicit this information?" (Resp.'t Ex. # 10 at 98). In response to the question, Officer Shane stated that he "asked them if something had happened over at their house and they both indicated yes." (Id.) The petitioner's counsel made a hearsay objection. The trial court sustained the objection and did not allow Officer Shane to testify about the statements made to him by the victims. During the closing argument of trial, the prosecuting attorney stated as follows:

> One of the things that was said in opening statement by the defense was to keep a critical ear open and listen to see if their stories are consistent. But when I tried to ask Lieutenant Shane what did the girls tell you, do you remember that, and there was an objection, they didn't want you to hear what the girls had told early that morning to Lieutenant Shane. They didn't want you to hear what they had said in the car or what was actually tape recorded at the hospital, and the reason why they didn't want you to hear that is because it was entirely consistent, and if it weren't consistent, don't you think that that would have been presented to you in this case,

(Resp. Ex. 10 at 524).

Habeas relief is warranted if the prosecutor's remarks rendered the trial fundamentally unfair. Darden v. Wainwright, 477 U.S. 168, 181 (1986). Thus, the defendant must have been unfairly prejudiced by the comment. United States v. Brockington, 849 F. 2d 872, 875 (4th Cir. 1988). In determining whether the prosecutor's comments denied the defendant of fundamental fairness, the court must examine "the nature of the comments, the nature and quantum of the evidence before the

10

jury, the arguments of opposing counsel, the judge's charge, and whether the errors were isolated or repeated." Lawson v. Dixon, 3 F.3d 743 (4th Cir. 1993), cert. denied, 510 U.S. 1171 (1994).

The habeas court found as follows:

> The record clearly indicates that the Court after Petitioner's counsel in his closing argument responded to the State's references, gave to the jury a limiting instruction, advising the jury that it was improper for counsel for either side to refer to evidence that was not admitted or what not a part of the record or for them to ask the jury to speculate as to what that evidence would be. Accordingly, the Court concludes that this proceeding was not rendered fundamentally unfair by the argument. The Court has carefully looked at the nature of the comments, the nature and quantum of evidence before the jury, the arguments of opposing counsel and the Court's charge as well as its limiting instruction. The errors alleged were isolated and where [sic] not repeated by the State.

(Resp't Ex. 8 at 5).

The prosecution did not state the content of the statements which had been ruled inadmissible by the trial court. Further, in light of the evidence at trial, the prosecutor's statement had no prejudicial effect on the jury. The prosecutor merely argued that the victims' statements were consistent in response to defense counsel's opening argument that the victims' testimony would be shown to be inconsistent. The prosecutor mentioned during closing that she tried to question Officer Shane regarding what the victims told him to support the State's position that the victims' statements were consistent. However, the prosecutor did not state what the victims' told Officer Shane. Moreover, the trial court gave a correcting instruction[2] and the error by the State was not repeated.

---

[2]The trial court advised the jury as follows:
Ladies and gentleman of the jury, I believe as a part of the charge, if you'll recall, you were instructed that you are to decide the case based upon the evidence and testimony that you hear during the trial. You are not to decide the case based upon anything that you did not hear during the trial, and for counsel, either counsel to argue to you things that were not said or done during the course of this trial is improper and you are instructed to disregard anything that either attorney says during their closing arguments that was not part of the trial.
I would also remind you, what I've said a couple three (3) times during the trial,

Thus, even if the prosecutor's statement was improper, the petitioner has not demonstrated that he was prejudiced by the statement. Therefore, the undersigned finds that the factual findings by the state court are not unreasonable and the presumption of correctness has not been rebutted by the petitioner. Furthermore, the decision of the state court is not contrary to or an unreasonable application of federal law.

D. **Evidence to Sustain the Verdict**

The petitioner alleges that the evidence does not support a conviction because he did not have time to commit the offenses. He argues that the time he arrived at the house and the time of the 911 call was made are not disputed. He arrived at the house at 3:30 a.m.. The 911 call was made at 4:05 a.m. Thus, the petitioner argues he could not have been in the house for longer than 35 minutes but that Johnson testified to events that took at a minimum 90-120 minutes to have occurred. Thus, according to the petitioner, there is no way the events could have occurred between 3:30 a.m. and 4:05 a.m. The petitioner further alleges in support of his position that there was insufficient evidence to convict him that the testimony of the victims was unreliable as they had been coached, and that none of his DNA was on any of the items examined at the West Virginia State Police Crime Lab.

Claims regarding the sufficiency of the evidence are cognizable in federal habeas corpus.

---

and that is, what they say is not evidence, and is they say anything that you didn't hear in this trial or they argue anything that you didn't hear in this trial, you are to disregard it, because it is not evidence for you to consider in making a determination in this case.
    The content of any statements given by anybody that was not part of the evidence and testimony in this trial is not a factor for you to consider, and what was contained in those statements and whether they were consistent or not consistent or whatever, is of no concern of yours in deciding this case.
(Resp't Ex. 10 at 557-558).

Jackson v. Virginia, 443 U.S. 307 (1979). The standard of review in a habeas proceeding is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319; Graham v. Angelone, 191 F. 3d 447 (4th Cir. 1999). The sufficiency of the evidence review authorized by Jackson is limited to 'record evidence.' Jackson does not extend to nonrecord evidence, including newly discovered evidence." Herrera v. Collins, 506 U.S. 390, 402 (1993).

The district court must "consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from facts proven to facts sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

The evidence at trial established that the petitioner, while intoxicated, arrived at the home of Harry Doman, the brother of Tina, the petitioner's estranged girlfriend, and asked to stay the night. Johnson, who was staying at the Doman home, and also watching Doman's children, agreed to allow him to stay. While at the Doman house, the petitioner sexually assaulted twins, Megan and Cassandra Doman.

Johnson testified that on December 1, 1999, he was babysitting the victims. He testified that he was asleep on the living room couch and around 3:30 or 4:00 a.m., the petitioner, who had dated the victims' aunt Tina, entered the house and shook him awake. According to Johnson, he spoke with the petitioner for 30 minutes before the petitioner went to Tina's bedroom.[3] Johnson also stated that the victims had been sleeping on the couch and the petitioner told them to go to their rooms. Johnson testified that about 30 minutes after the petitioner went to Tina's bedroom, he heard a door

---

[3]Tina was not home.

13

open. After he lay on the couch for 15 or 20 minutes more, he got up and looked for the girls. He found them with the petitioner in Tina's bedroom. Both girls were naked and hidden under a blanket. Johnson testified that the girls indicated to him that the petitioner told them to take their clothes off.

Megan and Cassandra Doman testified that the petitioner came into their bedroom and told them to take their clothes off and for Megan to go to Tina's room. Megan testified that the petitioner forced her to perform oral sex on him and that he inserted his finger in her vagina. Megan also testified that the petitioner told her to bring Cassandra into the room. She complied and the petitioner forced Cassie to perform oral sex on him.

Cassandra Doman testified that Megan returned to their room and told her that the petitioner wanted her in his room. Cassandra stated she went to the petitioner's room and that the petitioner ordered her to perform oral sex on him and that he inserted his finger into her vagina.

The testimony from the victims was sufficient to support the conviction for the crimes against them. See Loblein v. Dormine, 229 F. 3d 724 726 (8th Cir. 2000); United States v. Gabe, 237 F. 3d 954, 961 (8th Cir. 2001). While the petitioner alleges that the victims' testimony is unreliable and inconsistent, the Court must not undertake to evaluate the credibility of a witness, as the witness' credibility is within the sole province of the jury and is not susceptible to review. United States v. Saunders, 886 F.2d 56 (4th Cir.1989).

In addition to the victim's testimony, Catherine Rosinski, a pediatric nurse practitioner specializing in child sexual abuse, testified that she examined both girls immediately following the assaults. She testified that both Megan and Cassandra had bruising of the hymen which was consistent with their history of sexual abuse.

The petitioner testified that he went to the Doman house on December 1, 1999, because Tina had indicated she wanted to try to kill herself. He said he talked to Johnson for 10-15 minutes and then went to Tina's room and passed out. He further denied telling the girls to take off their clothes or that he touched them inappropriately.

The state habeas court found as follows:

> The record shows that the verdict was supported by the testimony of the two (2) child victims in this matter. Their testimony was credible and corroborated by other testimony as well as physical and medical evidence.

(Resp.'t Ex. # 8 p. 128).

The state court's findings are not an unreasonable determination of the facts or contrary to or an unreasonable determination of federal law.

### E. Evidentiary Hearing

The petitioner requests that the Court schedule an evidentiary hearing in this matter. The petitioner is not entitled to a hearing unless he "alleges additional facts that, if true, would entitle him to relief." Fullwood v. Lee, 290 F.3d 663, 681 (4th Cir.2002) (quoting McCarver v. Lee, 221 F.3d 583, 598 (4th Cir.2000)). The petitioner must also satisfy one of the six factors the Supreme Court identified in Townsend v. Sain, 372 U.S. 293, 312 (1963). The six factors are: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

Here, the petitioner is not entitled to an evidentiary hearing because he has not alleged any facts which, if true, would entitle him to relief.

## IV. **RECOMMENDATION**

It is recommended that the respondent's Motion to Dismiss and Motion for Summary be GRANTED and that the petition of Ralph Ray Tennant, Jr, filed pursuant to 28 U.S.C. §2254 be DENIED AND DISMISSED WITH PREJUDICE because his claims are without merit.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgement of this Court based upon such Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner and the Attorney General for the State of West Virginia.

DATED: July 11, 2005

/s *John S. Kaull*

**JOHN S. KAULL**
**UNITED STATES MAGISTRATE JUDGE**